**954-15**

NO. 03-13-00302-CR
IN THE
COURT OF CRIMINAL APPEALS
AUSTIN TEXAS

ORIGINAL

---

FROM APPEAL NO. 03-13-00302-CR
TRIAL COURT CASE NO. D-1-DC-13-904036
TRAVIS COUNTY

---

RECEIVED IN
COURT OF CRIMINAL APPEALS

SEP 15 2015

Abel Acosta, Clerk

# MARIO GAMEZ
## VS.
# THE STATE OF TEXAS

## PETITION FOR DESCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

SEP 17 2015

Abel Acosta, Clerk

MARIO GAMEZ
PETITIONER, PRO-SE
COFFIELD UNIT
TDCJ I.D.# 1850754
2661 FM 2054
TENNESSE COLONY, TX.
75884

C.C. FILE

(INDEX)

PAGE (1): REQUEST FOR ORAL ARGUMENT, STATEMENT OF THE NATURE OF THE CASE, PROCEDURAL HISTORY.

PAGE (2): GROUNDS FOR REVIEW.

PAGE (3): ISSUE (1)

PAGE (4): ISSUE (2)

PAGE (7): ISSUE (3)

PAGE (8): ISSUE (4)

PAGE (9): ISSUE (5) AND ISSUE (6)

PAGE (10) PRAYER

( AUTHORITIES )

BIGBY V. STATE, 892 S.W. 2d 864 (TEX. CRIM. APP. 1994).

BROOKS V. STATE, 323 S.W. 3d 893 (2010).

DUTTON V. EVANS, 400 U.S. 74, 80-82, 90 S.CT. 210, 27 L.Ed 2d 213 (1970).

FISHER V. STATE, 851 S.W. 2d 298, 302 (TEX. CRIM. APP. 1993).

FRANKLIN V. STATE 147 TEX. CRIM. 636, 638, 183 S.W. 2d 573, 574 (1944).

IN re WINSHIP, 397 U.S. 358, 364 (1970).

JACKSON V. VIRGINIA, 443 U.S. 307 (1979).

MASSEY V. STATE, 226 S.W. 2d 856, 960 (TEX. CRIM. APP. 1950).

MITCHELL V. STATE, 33 TEX. CRIM. 575, 577, 28 S.W. 475 (1894).

STEVEN V. ORTIZ, 465, 3d 1229, 1240 (2006).

TREJO V. STATE, 127 S.W. 546, 548 (TEX. CRIM. APP. 1903).

UNITED STATES V. GONZALEZ, 113 F. 3d 1026, 1028 (1997)

UNITED STATES V. MICHELENA-OROVIO, 702 F. 2d 496, 504 (5th Cir)

U.S. V. ADELZO-GONZALEZ, 268 F. 3d 772 (2001).

U.S. V. MUSA, 220 F. 3d 1096, 1102 (2000)

WRIGHT, 479 U.S. AT 822, 110 S.CT.

( STATUTS )

TEX. R. OF EVID., ART. 6 RULE 602

TEX. R. OF EVID. 803

TEX. PENAL CODE § 6.03 (a)

( CONSTITUTIONS )

6th UNITED STATES CONSTITUTIONAL AMENDMENT.

C.C. FILE

## REQUEST FOR ORAL ARGUMENT

ORAL ARGUMENT WOULD BE HELPFUL BECAUSE I WOULD HELP RESOLVE THE MANY ISSUES LEFT TO SPECULATION IN APPELLANTS TRIAL. SUCH AS HOW DID APPELLANT START THE TRUCK (appellants trial attorney repeatedly refused to ask the witness' if appellant had keys), HOW WAS THE COMPLAINANT STRUCK, WHAT WAS THE COMPLAINANT allegedly STABED WITH, WHAT METHOD WAS USED TO FIND A "MICROSCOPIC SPECK" OF D.N.A. ON THE TRUCK, AND WHY WAS THAT MICROSCOPIC SPECK OF D.N.A. NOT PROPERLY BAGED, LABLED, AND STORED. THESE ARE SOME OF THE ISSUES THAT NEED TO BE ANSWERED AND NOT LEFT TO SPECULATION.

## STATEMENT OF THE NATURE OF THE CASE

THIS WAS AN APPEAL FROM A CRIMINAL PROCEEDING. ON APRIL 11, 2013 A TRAVIS COUNTY GRAND JURY RETURNED A FOUR COUNT INDICTMENT AGAINST GAMEZ ALLEGING THE OFFENCES OF CAPITAL MURDER IN ONE COUNT AND MURDER IN THREE COUNTS. ON OR ABOUT APRIL 22, 2013, A JURY WAS SELECTED AND SWORN. GAMEZ ENTERED PLEAS OF NOT GUILTY TO THE FOUR COUNTS. ON APRIL 26, 2013, THE JURY FOUND HIM GUILTY OF THE FIRST COUNT ALLEGING THE OFFENCE OF CAPITAL MURDER. THE STATE DID NOT SEEK THE DEATH PENALTY, THE TRIAL COURT SENTENCED GAMEZ TO THE ONLY AVAILABLE PUNISHMENT, A LIFE SENTENCE WITHOUT THE POSSIBILITY OF PAROL.

## PROCEDURAL HISTORY

ON MAY 2, 2013 NOTICE OF APPEAL WAS FILED IN THE COURT OF APPEALS. ON JUNE 11, 2015 GAMEZ'S APPEAL WAS AFFERMED. ON JUNE 17, 2015 GAMEZ FILE A MOTION FOR EXTENTION OF TIME TO FILE A MOTION FOR REHEARING, NO RESPONSE WAS RECEAVED. ON JULY 18, 2015 GAMEZ FILED FOR AN EXTENTION OF TIME TO FILE A PETITION FOR DISCRETIONAR REVIEW, THE MOTION WAS GRANTED ON JULY 27, 2015.

1

C.C. FILE

NO. 03-13-00302-CR

MARIO GAMEZ

V.S

THE STATE OF TEXAS

## APPELLANTS PETITION FOR DISCRETIONARY REVIEW

APPELLANT, MARIO GAMEZ, SUBMITS THIS PITITION FOR DISCRETIONARY REVIEW IN RESPONCE TO THE OPINION ISSUED BY THE COURT ON JUNE 11, 2015, AND REQUEST THE COURT TO CONSIDER THE FOLLOWING ISSUES:

( ISSUES PRESENTED FOR REVIEW )

ISSUE (1): THE TRIAL COURT ABUSED IT'S DISCRETION BY REFUSING TO DISMISS APPOINTED COUNSEL AND APPOINT OTHER COUNSEL FOR GAMEZ.

ISSUE (2): THE EVIDENCE IS INSUFFICIENT TO PROVE GAMEZ WAS IN THE COURSE OF ROBBING THE COMPLAINANT AT THE TIME OF THE COMPLAINANT'S DEATH.

ISSUE (3): THE EVIDENCE IS INSUFFICIENT TO PROVE GAMEZ CAUSED THE DEATH OF THE COMPLAINANT BY STRIKING HIM WITH A MOTOR VEHICLE.

ISSUE (4): THE TRIAL COURT ABUSED IT'S DISCRETION BY PERMITTING A WITNESS TO SPECULATE THE COMPLAINANT NEVER WOULD HAVE TRADED HIS TRUCK FOR COCAINE.

ISSUE (5): THE TRIAL COURT ABUSED IT'S DISCRETION BY ADMITTING THE HEARSAY STATEMENT "WE RAN HIM OVER" BY NON-TESTIFYING CODEFENDANT JOHN SALINAS.

ISSUE (6): THE EVIDENCE IS INSUFFICIENT TO PROVE GAMEZ INTENTIONALY CAUSED THE DEATH OF THE COMPLAINANT.

2

C.C. FILE

## (ARGUEMENT AND AUTHORITIES)
### ISSUE (1)

THE TRIAL COURT ABUSED IT'S DESCRETION BY REFUSING TO DISMISS APPOINTED COUNSEL AND APPOINT OTHER COUNSEL FOR GAMEZ.

(1): THE TRIAL COURT DID NOT CONDUCT A PROPER INQUIRY CONCERNING MY MOTIONS AND VERBAL REQUEST TO DISMISS COUNSEL. THE TRIAL COURT DID NOT QUESTION ME IF I HAD FILED ANY MOTIONS TO DISMISS COUNSEL, DID NOT LET ME FINISH EXPLAINING WHAT OTHER MOTIONS COUNSEL REFUSED TO FILE ON MY BEHALF, AND DID NOT LET ME ELABORATE AS TO WHAT OTHER REASONS I BELEAVED CAUSED A CONFLICT OF INTEREST. TRIAL COURT SIMPLY DENIED MY REQUES BECAUSE IT CONSIDERED COUNSEL "AN EXCELLENT ATTORNEY" (2 RR 12).

(2): THERE WAS A SERIOUS BREACH OF TRUST (TRIAL COUNSEL EXPRESSED TO ME THAT I WAS LIEING ABOUT MY INNOCENCE) AND A SIGNIFICANT BREAKDOWN IN COMMUNICATION THAT SUBSTANTIALLY INTERFERED WITH THE ATTORNEY - CLIENT RELATIONSHIP (COUNSEL REFUSED TO SHOW ME EVIDENCE AND DID NOT SPEAK TO ME ABOUT A TRIAL STRATIGY)(SUPP. CR 15-19). I COULD NOT RELIE ON COUNSEL TO FILE VALID MOTIONS, TO SHOW ME THE EVIDENCE AGAINST ME, TO DISCUSE A TRIAL STRATEGY AFTER VIEWING THAT EVIDENCE, AND COULD NOT TRUST COUNSEL TO PROPERLY DEFEND ME IN TRIAL FOR THE REASONS STATED ABOVE.

(3) MY MOTIONS WERE TIMELY FILED (10 AND 2 MONTHS BEFOR TRIAL)(SUPP. CR 16.

THERE ARE THREE FACTORS IN REVIEWING A DISTRICT COURTS DENIAL OF A MOTION TO DISMISS COUNSEL: (1) THE ADEQUACY OF THE DISTRICT COURTS INQUIRY, (2) THE EXTENT OF ANY CONFLICT, AND (3) THE TIMELINESS OF THE MOTIONS, U.S. v. ADELZO-GONZALEZ, 268 F.3d 772 (2001). BEFOR DISTRICT COURT CAN ENGAGE IN A MESURED EXCERCISE OF DISCRETION WITH RESPECT TO DEFENDANTS REQUEST TO DISMISS COUNSEL, IT MUST CONDUCT AN INQUIRY ADEQUATE TO CREAT A SUFFICIENT BASES FOR REACHING AN INFORMED DESICION, U.S. CONST. AMEND. 6, U.S. v MUSA 220 F.3d 1096, 1102 (2000). A DISTRICT COURT MAY NOT DENY A MOTION TO DISMISS COUNSEL SIMPLY BECAUSE IT THINKS CURRENT COUNSEL'S REPRESENTATION IS ADEQUATE, SINCE EVEN IF A DEFENDANT'S COUNSEL IS COMPETENT, A SERIOUS BREAKDOWN IN COMMUNICATION CAN RESULT IN AN IMADEQUATE DEFENCE, UNITED STATES v. GONZALEZ, 113 F.3d 1026, 1028 (1997).

THE COURT OF APPEALS ERRORED IN FINDING THE TRIAL COURT DID NOT ABUSE

3

C.C. FILE

IT'S DESCRETION BY REFUSING TO DISMISS APPOINTED COUNSEL AND APPOINT OTHER COUNSEL FOR ME (2 RR 12). I PRAY FOR RELIEF THAT IS CONSISTENT WITH THIS OPINION.

## ISSUE (2)

THE EVIDENCE IS INSUFFICIENT TO PROVE I WAS IN THE COURSE OF ROBBING THE COMPLAINANT AT THE TIME OF THE COMPLAINANT'S DEATH.

THE STATES FOUNDATION FOR THIS CASE IS THREE HEARSAY STATEMENTS. I WAS CHARGED, INDICTED, TAKEN TO TRIAL, AND CONVICTED ON THOSE HEARSAY STATEMENTS, NOT TRIAL TESTIMONY.

(1) SANDRA ZAMORA DENIED CALLING CRIME STOPER (AFTER A FINACIAL REWARD WAS PLACED IN THE MEDIA). SHE DENIED MAKING THE HEARSAY STATEMENT AT TRIAL AND TESTIFIED THAT SHE REPEATEDLY TRIED TO TALK TO THE PROSECUTOR PRIOR TO TRIAL CONCERNING THE HEARSAY STATEMENT. ZAMORA TESTIFIED THAT GAMEZ SAID HE PURCHESSED THE TRUCK FROM A DOPE FIEND. DISPITE THREATS OF PERJURY AND AGGERVATED PERJURY BY THE TRIAL COURT, ZAMORA TESTIFIED THAT HER TESTIMONY WAS THE TRUTH AND THAT EVERYTHING IN THE HEARSAY STATEMENT WERE NOT (4 RR 226-231)

(2) CHRISTOPHER SHAW WAS ARRESTED WITH ME ON SEP. 10, 2011. HE DENIED HAVING ANY KNOWLEDGE OF HOW I ACQUIRED THE TRUCK AND STATED THAT HE PICKED ME UP BECAUSE I CALLED HIM SAYING I HIT A CAR AND NEEDED A RIDE. ON SEP. 27, 2011, SHAW WAS ARRESTED FOR A FEDERAL FELONY. ON SEP. 28, 2011, SHAW WAS INTEROGATED AND AGAIN DENIED KNOWING ANYTHING ABOUT HOW I ACQUIRED THE TRUCK. DETECTIVE JENNINGS MADE REPEATED REMARKS THAT IF SHAW GAVE "INFORMATION" HIS FEDERAL CHARGES COULD BE REDUCED TO STATE CHARGES. AT TRIAL SHAW DENIED THAT DET. JENNINGS HAD MADE ANY SUCH REMARKS. SHAW WAS SHOWN A VIDEO, OUT OF THE JURY'S PRESENCE, OF HIS INTEROGATION SHOWING THE MANY TIMES DET. JENNINGS MADE THOSE REMARKS, THAT IN EXCHANG FOR SHAW'S INFORMATION HIS FEDERAL CHARGES COULD BE REDUCED TO STATE CHARGES. SHAW THERE AFTER TESTIFIED THAT DET. JENNINGS DID MAKE THOSE REMARKS AND THAT HIS FEDERAL CHARGES WERE REDUCED TO STATE JAIL FELONY AND HE RECEAVED 9 MONTHS FOR THAT CHARGE (5 RR 13-38).

(3) THOMAS SALINAS TESTIFIED THAT HE MADE THE HEARSAY STATEMENT BECAUSE HE WAS SCARED. HE ADMITTED THAT THE CONTENTS IN THE HEARSAY STATEMENT WERE NOT TRUE. HE TESTIFIED THAT GAMEZ PURCHED THE TRUCK WITH CRACK (5 RR 94-96).

THE STATE ALLEGED THAT TWO THINGS VALIDFY THE HEARSAY STATEMENTS: (1) A "3 BY 3 CENTIMETER LACERATION," "AN INCH OVERALL INCLUDING THE CONTUTION," WHICH WAS CAUSED BY A "**BLUNT** OBJECT"; AND WAS ASSOCIATED WITH THE FRACTURED RIBS

4

C.C. FILE

THREE OF THEM. IT WAS THE RESULT OF BLUNT FORCE TRAUMA (5 RR 73-84). A RATIONAL AND LOGICAL CONCLUSION OF THESE FACTS IS THAT THE COMPLAINANT WAS STRUCK BY A BLUNT OBJECT WITH ENOUGH FORCE TO CAUSE THE LACERATION AND FRACTURE THREE RIBS. NOT A "STAB WOUND". THE STATE DID NOT ASK ANY MEDICAL EXPERT IF THE LACERATION WAS A, OR CONSISTENT WITH A STAB WOUND. THE FACT THAT THE STATE DID NOT SEEK TO CONFIRM THIER ALLEGATION OF A STAB WOUND IS TELLING. AND THAT THE COMPLAINANT WAS FOUND WITH A SET OF KEYS. I REPEATEDLY TOLD THE DETECTIVES THAT THE COMPLAINANT GAVE ME KEYS. AT TRIAL THREE WITNESS' TESTIFIED THAT THEY SEEN ME WITH THE TRUCK. THE STATE DID NOT ASK ANY OF THEM IF THEY SEEN ME WITH KEYS TO THE TRUCK PRIOR TO MY ARREST. MY TRIAL ATTORNEY REPEATEDLY REFUSED TO ASK THEM SAYING "I'M NOT GOING TO ASK THAT."

THE HEARSAY STATEMENTS DID NOT POSSESS INDICIA OF RELIABILITY BY VIRTUE OF IT'S INHERENT TRUSTWORTHINESS; AND THE CONTENTION THAT EVIDENCE CORROBERATING THE TRUTH OF A HEARSAY STATEMENT MAY PROPERLY SUPPORT A FINDING THAT THE STATEMENT BEARS PARTICULARIZED GUARANTEES OF TRUSTWORTHINESS IS REJECTED BY THE SUPREME COURT. FURTHER MORE THE HEARSAY STATEMENTS WERE NOT CORROBERATED BY PHYSICAL EVIDENCE OR EXPERT TESTIMONY, AND ALL THREE HEARSAY WITNESS' WERE IMPEACHED AND THEY COMMITTED PERJURY AT TRIAL AS THE HEARSAY STATEMENT WERE SIGNED AND SWORN AND THE TRIAL TESTIMONIES ARE SWORN. THE COMPLAINANT WAS NOT "STABBED". THE STATE MAKING AN ALLEGATION AND NOT PRODUCING THE REQUIRED EVIDENCE TO SUPPORT THE ALLIGATION AND INTENTIONALLY LEAVING THE ISSUE TO SPECULATION DOES NOT MAKE IT A FACT. AN OFFICERS SPECULATION IS NOT THE SAME AS MEDICAL EXPERT OPINION. THE FACT THAT I DID NOT HAVE THE KEYS ON ME AT THE TIME OF MY ARREST DOES NOT MEAN I DIDN'T HAVE ANY PRIOR TO MY ARREST. NO EYE WITNESS WAS ASK IF THEY SEEN ME WITH KEYS TO THE TRUCK SO THIS ISSUE WAS LEFT TO SPECULATION. THE EVIDENCE TO CONFIRM OR DENIE THESE TWO ALLIGATIOS WERE OBTAINABLE THROUGH WITNESS TESTIMONY. IN FAILING TO PRODUCE THAT EVIDENCE THE JURY WAS LEFT WITH SPECULATION.

THE STANDARD OF REVIEW FOR SUFFICIENCY OF THE EVIDENCE IS JACKSON V. VIRGINIA 433 U.S. 307 (1979). IT REQUIRES EVERY STATE CRIMINAL CONVICTION TO BE SUPPORTED BY EVIDENCE THAT A RATIONAL TRIER OF FACT COULD ACCEPT AS SUFFICIENT TO PROVE ALL THE ELEMENTS OF THE OFFENCE CHARGED BEYOND A REASONABLE DOUBT, IN re WINSHIP 397 U.S. 358, 364 (1970), FISHER V. STATE 851 S.W. 2d 298, 302 (TEX. CRIM. APP. 1993). THE VERDICT IS EATHER RATIONAL AND

5

REASONABLE OR IT IS NOT; IT CANNOT BE SEMIRATIONAL AND STILL MEET THE _JACKSON_ STANDARD, _BROOKS v. STATE_ 323 S.W. 3d 893 (2010). IF THE GUILT OF APPELLANT IS NOT MADE TO APPEAR TO A REASONABLE CERTAINTY, IT IS THE DUTY OF THIS COURT TO REVERSE THE JUDGEMENT, AND EVERY ELEMENT "MUST BE PROVEN BEYOND A REASONABLE DOUBT, PROVEN BY FACTS AND CIRCUMSTANCES WHICH LEAD WITH REASONABLE CERTAINTY TO THE CONCLUSION SOUGHT, AND NOT LEFT TO SPECULATION AND SURMISES", _MITCHELL v. STATE_, 33 TEX. CRIM. APP. 575, 577, 28 S.W. 475 (1894) (BECAUSE EVIDENCE "UTTERLY FAILED" TO SHOW DEFENDANT'S **SPECIFIC INTENT TO RAVISH HOMEOWNER, CONVICTION REVERSED**). IF "THE FACTS" DO NOT ESTABLISH EVERY ELEMENT BEYOND A REASONABLE DOUBT, THOSE "FACTS" REQUIRE AN APPELLATE COURT TO AQUITE THE DEFENDANT UNDER _JACKSON_, _BIGBY v. STATE_, 892 S.W. 2d 864 (TEX. CRIM. APP. 1994). HOWEVER STRONG THE INFERENCE MIGHT BE THAT JURY'S VERDICT WAS CORRECT" THAT INFERENCE IS NOT AS STRONG AS, AND MUST YIELD TO THE PRESUMPTION OF INNOCENCE WHICH FOLLOWS THE ACCUSED THROUGHOUT THE TRIAL OF EVERY CRIMINAL CASE", _MASSEY v. STATE_ 226 S.W. 2d 856, 960 (TEX. CRIM. APP. 1950). AS THE COURT OF CRIMINAL APPEALS NOTED OVER A CENTURY AGO, "IT HAS LONG BEEN A PRINCIPLE IN OUR JURISPRUDENCE THAT WHERE AN ISSUE IN A CRIMINAL CASE IS LEFT IN DOUBT BY THE EVIDENCE, AS IN THIS CASE, THE DOUBT SHOULD ALWAYS BE RESOLVED IN FAVOR OF THE ACCUSED. IT IS AT THIS POINT THAT THE PRESUMPTION OF INNOCENCE AND REASONABLE DOUBT HAVE PARTICULAR MEANING", _TREJO v. STATE_, 127 S.W. 546, 548 (TEX. CRIM. APP. 1903).

"THE COURT WILL REVERSE A CASE ON THE INSUFFICIENCY OF THE EVIDENCE ONLY WHEN THE **TESTIMONY**, VIEWED IN IT'S STRONGEST LIGHT FROM THE STANDPOINT OF THE STATE, FAILS TO MAKE GUILT OF THE ACCUSED REASONAIBLY CERTIN," _FRANKLIN v. STATE_, 147 TEX. CRIM. 636, 638, 183 S.W. 2d 573, 574 (1944). IN _WRIGHT_, THE SUPREME COURT HELD THAT HEARSAY EVIDENCE ADMITTED AGAINST A CRIMINAL DEFENDANT "MUST POSSESS INDICIA OF RELIABILITY BY VIRTUE OF IT'S INHERENT TRUSTWORTHINESS, NOT BY REFRENCE TO OTHER EVIDENCE AT TRIAL, REJECTING THE CONTENTION THAT EVIDENCE CORROBERATING THE TRUTH OF A HEARSAY STATEMENT MAY PROPERLY SUPPORT A FINDING THAT THE STATEMENT BEARS PARTICULARIZED GUARANTEES OF TRUSTWORTHINESS, _WRIGHT_, 497 U.S. AT 822, 110 S.CT. 3139, _STEVEN v. ORTIZ_, 465, f 3d. 1229, 1240 (2006). U.S.C.A. 6.

THE EXPERT TESTIMONY AND PHYSICAL EVIDENCE DO NOT SUPPORT THE ALLEGATION THAT THE COMPLAINANT WAS STABED, THE ALLEGATION THAT I DID NOT HAVE KEYS TO THE TRUCK PRIOR TO MY ARREST IS SPECULATION AND THE HEARSAY STATEMENTS DID NOT POSSESS INDICIA OF RELIABILITY BY VIRTUE OF IT'S INHERENT

6

TRUSTWORTHINESS". THE EVIDENCE IS INSUFFICIENT TO SUPPORT THE ELEMENT OF ROBBERY.

(CONCLUSION)

THE COURT OF APPEALS ERRORED IN FINDING THERE WAS SUFFICIENT EVIDENCE TO PROVE GAMEZ WAS IN THE COURSE OF ROBBING THE COMPLAINANT AT THE TIME OF THE COMPLAINANT'S DEATH. GAMEZ PRAYS FOR RELIEF THAT IS CONSISTENT WITH THIS OPINION.

ISSUE (3)

I RELIE ON THE SAME ARGUMENTS AND AUTHORITIES SET FORTH IN ISSUE (2).

THE EVIDENCE IS INSUFFICIENT TO PROVE GAMEZ CAUSED THE DEATH OF THE COMPLAINANT BY STRIKING HIM WITH A MOTOR VEHICLE.

STATES THEORY: WHILE THE COMPLAINANT STOOD BY HIS TRUCK I ASSULTED THE COMPLAINANT BY "BEATING THE MAN WITH A CHAIN" (4 RR 227) OR "HIT THE MAN CAUSING HIM TO FALL" (5 RR 13) OR "JUST THREW THE TRUCK OWNER TO THE FLOOR" (5 RR 96-97), AND JOHN SALINAS STABED HIM, THE COMPLAINANT FELL AND LAY INJURED ON THE GROUND BY THE TRUCK, SALINAS AND I GOT IN THE TRUCK WITHOUT THE KEY, SOMEHOW STARTED IT, AND WHILE LEAVING STRUCK THE COMPLAINANT WHILE HE LAID INJURED WITH ENOUGH FORCE TO CAUSE BLOOD TO BE LEFT ON THE THINGS AROUND HIM AND CAUSE THE INJURIES THAT LATER RESULTED IN HIS DEATH.

WHEN DESCRIBING THE SCENE, OFFICER DARRELL BURNHAM STATED HE SAW BLOOD IN THE STREET AND THE THING AROUND THE COMPLAINANT (4 RR 102). THE COMPLAINANT SUFFERED FRACTURED RIBS, BRUISES, ABRASIONS, CUTS, SEVERE HEAD TRAUMA, AND BRAIN INJURY. DR. EARNEST GONZALES AND DR. SATISH CHUNDRU STATED THAT THE INJURIES WERE THE RESULT OF "VERY FORCEFUL TRAUMA", THAT IT WAS "UNCONCEAVABLY OF THAT BY HIS OWN TRUCK THAN A CAR TRAVELING AT NORMAL SPEED (30-40 M.P.H.), NOT A VEHICLE BEGGINING TO MOVE FROM A DEAD STOP" (5 RR 50-54, 82-86). THERE WAS A MICROSCOPIC SPECK OF D.N.A. FOUND INSIDE THE FRONT BUMPER. SAPANA PRAJAPATI, A FORENSIC SCIENTIST TESTIFIED THAT IT WAS "SOO SMALL YOU COULD BREARLY SEE IT WITH THE KNEAKED EYE (6 RR 86-87) CASSIE CARRADINE, A D.N.A. ANALYST STATED SHE HAD TO PLACE THE SAMPLE UNDER A MICROSCOPE TO SEE IT, SHE DENIED THAT IT WAS A POSSITIVE MATCH BUT STATED THAT IT WAS CONSISTENT WITH THE COMPLAINANTS (6 RR 91-98). AND THERE WAS A SINGLE HAIR FOUND INSIDE THE REAR BUMPER THAT WAS CONSISTENT WITH THE COMPLAINANTS (6 RR 74). IN HER TESTIMONY SHE STATE THE COMPLAINANT COULD BE THE SOURCE OF THE D.N.A. AND HAIR.

THE EXPERT TESTIMONY AND PHYSICAL EVIDENCE CONTRADICTS THE STATES THEORY. IT WAS CONSIDERED UNCONCEAVABLE DUE TO THE EXTENT OF THE COMPLAINANTS INJURIES AND THE AMOUNT OF BLOOD ON THE SCENE DOES NOT MATCH THE STATES

7

C.C. FILE

ALLEGATION THAT A MICROSCOPIC SPECK OF D.N.A. THAT COULD BE THE COMPLAINANTS IS SUFFICIENT TO SHOW THAT THE TRUCK STRUCK THE COMPLAINANT. THE STATES MAIN "EVIDENCE" AGAINST ME IS THE HEARSAY STATEMENTS NOT THE TRIAL TESTIMONY. THE HEARSAY STATEMENTS DID NOT POSSESS INDICIA OF RELIABILITY BY VIRTUE OF THIER INHERENT TRUSTWORTHINESS, NOT BY REFRENCE TO OTHER EVIDENCE AT TRIAL. TO BELEAVE THE STATES THEORY REQUIRES A CREATIVE IMAGINATION AND LOTS OF SPECULATION BUT RATIONALLY THE FACTS DO NOT LEAD TO A LOGICAL CONCLUSION OF GUILT

### (CONCLUSION)

THE COURT OF APPEALS ERRORED IN FINDING THERE WAS SUFFICIENT EVIDENCE TO PROVE GAMEZ CAUSED THE DEATH OF THE COMPLAINANT BY STRIKING HIM WITH A MOTOR VEHICLE. GAMEZ PRAYS FOR RELIEF THAT IS CONSISTENT WITH THIS OPINION.

### ISSUE (4)

THE TRIAL COURT ABUSED IT'S DESCRETION BY PERMITTING A WITNESS TO SPECULATE THE COMPLAINANT NEVER WOULD HAVE TRADED HIS TRUCK FOR CRACK COCAINE (5RR 124).

SANDRA ZAMORA AND THOMAS SALINAS TESTIFIED THAT I PURCHESSED THE TRUCK FROM A DOPE FIEND WITH CRACK COCAINE AND NORMA CHAVIRA AND BARBARA VARGAS TESTIFIED THAT I PURCHESED THE TRUCK, THAT I WAS GOING TO FIX IT UP, AND THAT I WAS GOING TO PUT IT IN MY NAME WITH THIER HELP. (4RR 226-231)(5RR 94-96)(6RR 107-110)(4RR 206-212)

CORRINE GONZALES TESTIFIED THAT HER BROTHER, THE COMPLAINANT, DID NOT LIKE HER TO KNOW ABOUT HIS DRUG PROUBLEM, THAT HE HAD PREVICUSLY SOLD HIS POSSESSIONS FOR CRACK COCAINE, THAT HE WOULD LIE TO HER SAYING HE NEEDED TOOLS FOR WORK ONLY TO SELL THEM FOR CRACK. SHE TESTIFIED THAT HE WOULD "SELL ANYTHING" THEN SPECULATED THAT HE WOULD NOT TRADE HIS TRUCK FOR CRACK COCAINE (5RR 124-136)

CORRINE GONZALES MAY HAVE HAD PERSONAL KNOWLEDGE OF OTHER MATTERS BUT BY HER OWN TESTIMONY HE DID NOT INFORM HER OF HIS DRUG PROUBLEMS OR TRANSACTIONS IN FACT SHE TESTIFIED HE LIED TO HER CONCERNING SUCH ISSUES.

A WITNESS MAY NOT TESTIFY TO A MATTER UNLESS EVIDENCE IS INTRODUCED SUFFICIENT TO SUPPORT A FINDING THAT THE WITNESS HAS PERSONAL KNOWLEDGE OF THE MATTER, TEX. R. OF EVIDENCE ART. 6 RULE 602.

ABSENT SUFFICIENT KNOWLEDGE GONZALES' STATEMENT WAS SPECULATION AND INADMISSIBLE. IT WAS HARMFUL AS IT PREJUDICED ME AND MY DEFENCE, AND THE STATE MADE REPEATED REFRENCES TO THE SPECULATIVE STATEMENT TO BOLSTER THIER ALLEGATION OF A ROBBERY IN THIER CLOSING ARGUMENT.

THE COURT OF APPEALS ERRORED IN FINDING THE TRIAL COURT DID NOT ABUSE

C.C. FILE

IT'S DESCRETION BY PERMITTING A WITNESS TO SPECULATE THE COMPLAINANT NEVER WOULD HAVE TRADED HIS TRUCK FOR CRACK COCAINE. GAMEZ PRAYS FOR RELIEF THAT IS CONSISTENT WITH THIS OPINION.

## ISSUE (5)

THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING THE HEARSAY STATEMENT "WE RAN HIM OVER," BY NON-TESTIFYING CODEFENDANT JOHN SALINAS (5RR 8-13)

THE HEARSAY STATEMENT WAS INADMISSIBLE AS IT DID NOT POSSESS INDICIA OF RELIABILITY BY VIRTUE OF IT'S INHERENT TRUSTWORTHINESS, VIOLATED MY 6th CONSTITUTIONAL AMENDMENT RIGHT TO CONFRONTATION, AND THE TRIAL COURT, THE STATE, AND DEFENCE COUNSEL AGREED IT WAS INADMISSIBLE AND GRANTED THE MOTION TO LIMINE (4RR 169, 5 RR 6-7). IT WAS HARMFUL AS IT PREJUDICED MY DEFENSE AND THE STATE MADE REPEATED REFRENCES TO THE INADMISSIBLE HEARSAY STATEMENT TO BOLSTER THIER ALLEGATION OF A ROBBERY.

RULE 803(24) IS NOT EXCLUDED BY THE HEARSAY RULE EVEN THOU THE DECLARANT IS AVAILABLE AS A WITNESS, TEX. R. OF EVID . 803. ACCORDINGLY, AN OUT-OF-COURT STATEMENT THAT FALLS WITH AN EXCEPTION TO A HEARSAY RULE UNDER A STATE'S EVIDENTIARY RULE MUST NON THE LESS BE EXCLUDED FROM A DEFENDANTS TRIAL IF IT'S ADMISSION WOULD DEPRIVE HIM OF HIS CONSTITUTIONAL RIGHT OF CONFRONTATION, DUTTON v. EVANS, 400 U.S. 74, 80-82, 90 S.CT 210, 27 LEd 2d 213 (1970). IN WRIGHT, THE SUPREME COURT HELD THAT HEARSAY EVIDENCE ADMITTED AGAINST A CRIMINAL DEFENDANT "MUST POSSESS INDICIA OF RELIABILITY BY VIRTUE OF IT'S INHERENT TRUSTWORTHINESS, NOT BY REFRENCE TO OTHER EVIDENCE AT TRIAL, WRIGHT, 497 U.S. AT 822, 110 S.CT. 3139. REJECTING THE CONTENTION THAT EVIDENCE CORROBERATING THE TRUTH OF A HEARSAY STATEMENT MAY PROPERLY SUPPORT A FINDING THAT THE STATEMENT BEARS PARTICULARIZED GUARANTEES OF TRUSTWORTHINESS, STEVENS v. ORTIS, 465 F.3d 1229, 1240 (2006).

## (CONCLUSION)

THE COURT OF APPEALS ERRORED IN FINDING THE TRIAL COURT DID NOT ABUSE IT'S DESCRETION BY ADMITTING THE HEARSAY STATEMENT BY NON-TESTIFYING CODEFEN-DANT JOHN SALINAS. GAMEZ PRAYS FOR RELIEF THAT'S CONSISTENT WITH THIS OPINION.

## ISSUE (6)

THE EVIDENCE IS INSUFFICIENT TO PROVE GAMEZ INTENTIONALY CAUSED THE DEATH OF THE COMPLAINANT.

I RELIE ON THE SAME ARGUMENTS AND AUTHORITIES FROM ISSUES (2) AND (3). THERE IS NO EVIDENCE SHOWING THAT IT WAS MY CONSCIOUS OBJECTIVE OR DESIRE TO STRIKE THE COMPLAINANT WITH A MOTOR VEHICLE AND.

9

C.C. FILE

INTENTIONALY CAUSE HIS DEATH, TEX. PENAL CODE § 603(a). INTENT IS A STATE OF MIND ISSUE. THERE IS NO EVIDENCE OF MY STATE OF MIND AT THE TIME OR BEFORE I ALLEGEDLY COMMITTED THE OFFENCE. THERE WAS NO EVIDENCE THAT THE ALLEGED ACT WAS INTENTIONAL OR PREMEDITATED.

THE STATE AND COURT OF APPEALS ERRORED IN ALLEGING THAT SHOWING GUILT OR KNOWLEDG OF WRONG DOING IS SUFFICIENT TO PROVE INTENT. MITCHELL v. STATE, 33 TEX. CRIM. APP. 575, 577, 28 S.W. 475 (1894) (BECAUSE EVIDENCE "UTTERLY FAILED" TO SHOW DEFENDANT'S SPECIFIC INTENT TO RAVISH HOMEOWNER, CONVICTION REVERSED). IF A DEFENDANT IS FOUND GUILTY OF CAUSING A DEATH IT IS NOT AUTOMATICLY PRESUMED IT WAS INTENTIONAL. FUTHERMORE THE EXPERT TESTIMONY AND PHYSICAL EVIDENCE SUPPORT MY INNOCENCE ON THE ELEMENT OF ROBBERY AND CAUSATION OF DEATH. THE HEARSAY STATEMENTS WERE DISCUSED IN ISSUES (2),(3), AND (5). I MAINTAIN MY INNOCENCE. I DID NOT ROB THE COMPLAINANT OR STRIKE HIM WITH ANY THING MUCHLESS A VEHICLE.

### (CONCLUSION)

THE COURT OF APPEALS ERRORED IN FINDING THERE WAS SUFFICIENT EVIDENCE TO PROVE GAMEZ INTENTIONALY CAUSED THE DEATH OF THE COMPLAINANT. GAMEZ PRAYS FOR RELIEF THAT IS CONSISTENT WITH THIS OPINION.

### ( PRAYER )

WHEREFORE, PREMISES CONSIDERED, MARIO GAMEZ PRAYS THIS HONORABLE COURT WILL REVERSE THE JUDGEMENT OF CONVICTION AND REMAND FOR A NEW TRIAL, REVERSE THE JUDGEMENT OF CONVICTION AND REFORM TO AN ACQUITTAL AS THE JURY FOUND HIM NOT GUILTY OF THE OTHER CHARGES ON THE INDICTMENT.

RESPECTFULLY SUBMITTED,

MARIO GAMEZ

PETITIONER, PRO-SE

TEXAS DEP. OF CRIMINAL JUSTICE

COFFIELD UNIT

T.D.C.J. I D # 1850754

TENNESSEE COLONY, TX. 75884

C.C. FILE

# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00302-CR

### Mario Gamez, Appellant

### v.

### The State of Texas, Appellee

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
NO. D-1-DC-13-904036, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING**

---

## MEMORANDUM OPINION

A jury found Mario Gamez guilty of capital murder. *See* Tex. Penal Code § 19.03. Because the State did not seek the death penalty, the court automatically imposed a sentence of life in prison without the possibility of parole. *See id.* §§ 12.31(a)(2), 19.03(b). Gamez challenges the trial court's refusal to replace his appointed counsel, its admission of certain testimony, and the sufficiency of the evidence to support the conviction. We will affirm the judgment.

## BACKGROUND

It is undisputed that Bernard Gonzales was found lying face down in blood and vomit on 4th Street east of downtown Austin shortly before 2 a.m. on September 8, 2011. Police and medical personnel who responded to a passerby's 911 call testified that Gonzales's breathing was rapid, labored, and gurgling. Travis County Deputy Chief Medical Examiner Dr. Satish Chundru testified that Gonzales suffered a brain injury of a severity typically associated with car wrecks or

falls from great heights, leaving him comatose until his death a few days later. Chundru testified that Gonzales also suffered tears to his aorta near the middle of his chest that were of the type usually associated with car wrecks. Several witnesses testified that Gonzales's face was badly bruised and he had abrasions on his legs. A police officer who responded to the scene testified that Gonzales had a stab wound on the left side of his chest that was inconsistent with the nature of his other injuries. Chundru concluded that Gonzales died of complications from blunt-force trauma, opining that the injuries "seem[ed] consistent with an auto/ped[estrian] accident." A police officer testified that Gonzales had $16 cash and keys to a GMC vehicle. Though hospital tests showed presumptive positive for cocaine use, he was not found with any crack cocaine paraphernalia.

Police soon discovered that Gonzales's truck was missing. The owner of a nearby business testified that a black pickup truck had been parked near his business overnight for several months. Motion-activated security cameras from the business showed two unidentified individuals walking at 1:20 a.m. toward where the truck usually was parked. Three minutes later, a camera showed the truck being driven away. Police put out a bulletin regarding the missing black truck and, two days later, a police officer received a call about a suspicious car that reportedly contained a person connected to the truck. That car was driven by Christopher Shaw, but owned by Norma Chavira. When police stopped the car, Gamez was hiding in the back seat. Police found the missing black truck nearby.

Police learned that Chavira, Shaw, Gamez, and John Salinas lived in a duplex near where the pickup was found. Police found items belonging to Gonzales in the nearby woods

2

and in a trash can. In Gamez's bedroom, police found more of Gonzales's belongings including prescription drugs, documents, and the truck title.

Chavira testified that she first noticed the black pickup truck on the morning of September 8, 2011. She said that Gamez told her that he had bought the truck from a friend, and Gamez's sister testified that he called her, excited to have purchased a vehicle and wanting to know how to change the owner's name on the title. She said that she walked him through how to investigate the history of the car's title.

Chavira's boyfriend, Shaw, testified that Gamez told him that he "jacked" the truck from a man. Shaw said that Gamez reported punching the man and that John Salinas claimed to have stabbed the man. Shaw testified that Gamez said he drove and that John Salinas added that "we ran him over, it was like running over a speed bump." Shaw testified that Gamez threatened him if he told anybody about how Gamez got the truck.

A police officer testified that Gamez first said that he bought the truck from a friend and later said that he traded Gonzales crack cocaine for the truck. (Police officers testified that "crack rentals"—where persons "rent" or buy vehicles in exchange for drugs—occur in the area where Gonzales was found.) The officer testified that Gamez said that Gonzales was not injured when Gamez drove away. The same officer had interviewed Gonzales two days earlier when Gonzales was robbed and hit on the back of the head in the course of a drug deal.

A police officer testified that Sandra Zamora called a police tip line and provided information about the robbery that had not been publicly released. The officer interviewed Zamora in person and wrote a statement memorializing that interview, which Zamora signed. In

3

the statement, Zamora said that Gamez and John Salinas told her that they got the truck as a dope rental in exchange for crack cocaine. She stated that Gamez told her he beat the truck's owner with a chain and that John Salinas stabbed the owner as he fought to keep his belongings. The officer testified Zamora also told him that Gamez said he drove the truck over the man and that they stopped so that John Salinas could ask the man if he was okay. At trial, however, Zamora denied calling a tip line and denied that she said any of these things to police, asserting that she signed the statement without reading it.

Thomas Salinas testified that he, John Salinas (his brother), and Gamez (his stepbrother) were walking to Gamez's home early on September 8, 2011, after an evening of drinking at a friend's house. Thomas Salinas said he stopped to urinate by some buildings near where Gonzales was later discovered. He testified that John Salinas and Gamez continued walking up a hill, then appeared a few minutes later in a pickup truck. Gamez was driving and John Salinas honked the horn, telling him to get in. Thomas Salinas testified that they told him they bought the truck for twenty rocks of crack cocaine and some money.

Law enforcement laboratory analysts testified that hair found under the rear bumper on Gonzales's truck was microscopically similar to Gonzales's hair and that DNA in blood found inside the front bumper of the truck was consistent with DNA in Gonzales's blood.

## DISCUSSION

Gamez raises three types of challenges to the judgment. He contends that the trial court abused its discretion by refusing to dismiss appointed counsel and give him new counsel,

4

that the trial court abused its discretion in admitting certain evidence, and that the evidence admitted was insufficient to prove some elements of the crime.

**The trial court did not abuse its discretion by refusing to dismiss appointed counsel.**

Before trial, Gamez was not satisfied with his counsel who was appointed on October 17, 2011. On January 23, 2013, Gamez filed a motion to remove his counsel. On February 11, 2013, Gamez's attorney filed multiple motions for discovery, for notice of the State's intention to use evidence of extraneous offenses, to suppress evidence,[1] and to limit the State's right to inquire about prior convictions and extraneous conduct. On April 22, 2013, the day before trial, Gamez asserted that he and his appointed counsel had "a really big conflict of interest." He asserted that his attorney had not shown him evidence like the surveillance videos and had not filed a motion for nineteen months. His attorney responded that he had explained to Gamez that the videos were short and did not identify him or show anyone committing the alleged crimes, but that he would show him the video segments. Gamez's attorney said that he had discussed what he considered more inculpatory evidence like potential testimony. He said that the motions Gamez requested were not relevant or even legal motions and that he would not file frivolous motions on his client's behalf. The trial judge denied the motion to change attorneys, stating that he had presided over proceedings involving Gamez's lawyer and that he considered him "an excellent attorney."

---

[1] These motions were actually filed and ruled on in a different trial court cause (No. D-1-DC-11-302180), but the trial court in this cause "adopted" the motions and rulings in that cause after Gamez was reindicted in this cause.

5

A defendant with appointed counsel is entitled to representation consistent with the constitution and statutes. *See* U.S. Const. amends. VI, XIV; Tex. Code Crim. Proc. art. 26.04. The defendant carries the burden of proving that he is entitled to a change of counsel. *Hill v. State*, 686 S.W.2d 184, 187 (Tex. Crim. App. 1985). Personality conflicts and disagreements concerning trial strategy are typically not valid grounds for withdrawal. *King v. State*, 29 S.W.3d 556, 566 (Tex. Crim. App. 2000). A trial court has no duty to search for counsel agreeable to the defendant. *Id.* The Sixth Amendment guarantees the right to reasonably effective assistance of counsel, which includes the right to "conflict-free" representation. *See Cuyler v. Sullivan*, 446 U.S. 335, 348-50 (1980). In the case of a conflict of interest, trial counsel renders ineffective assistance if the defendant can demonstrate (1) that trial counsel was burdened by an actual conflict of interest and (2) that the conflict actually affected the adequacy of counsel's representation. *Cuyler*, 446 U.S. at 349-50. An "actual" conflict of interest exists if counsel must choose between advancing his client's interests in a fair trial and advancing other interests to the detriment of his client's interest. *Acosta v. State*, 233 S.W.3d 349, 355 (Tex. Crim. App. 2007). A potential conflict of interest, without more, is insufficient to reverse a conviction. *See id.* at 350. We will not speculate about a strategy an attorney might have pursued but for the existence of a potential conflict of interest absent a showing that the conflict became actual. *Routier v. State*, 112 S.W.3d 554, 585 (Tex. Crim. App. 2003). We review the trial court's refusal to dismiss appointed counsel for an abuse of discretion. *King*, 29 S.W.3d at 566.

Gamez never explained at trial what his attorney's alleged conflict of interest was or proved that it became an actual conflict of interest. Nor did he prove that his attorney's alleged

6

delays or failures to show him the video and file undisclosed motions entitled him to new counsel. Gamez's counsel stated in court on the morning of trial without dispute that he had shown Gamez the video segments. Gamez did not explain how any delay in showing him the video affected his defense. Gamez's attorney filed motions, albeit nineteen months after the indictment, and Gamez never showed what motions he felt should have been filed that his counsel did not file or how not filing the motions (or the timing of filing the motions) affected his ability to prepare and present a defense. Both his attorney and the prosecutor asserted that the State had disclosed more evidence pretrial than required. On this record, we cannot say that the trial court abused its discretion by refusing to remove appointed counsel.

**Admission of evidence**

Gamez complains about the admission of Gonzales's sister's testimony about her brother's thought processes and Shaw's testimony about a statement by John Salinas about running over Gonzales.

The trial court did not abuse its discretion by permitting Gonzales's sister to speculate that Gonzales never would have traded his truck for cocaine.

Gamez asserts that the trial court should not have overruled his objection in the following exchange during the State's examination of Gonzales's sister:

Q. Corinne, I want to ask you, in your mind would your brother have ever traded his truck and/or any of the personal belongings for crack cocaine?

A. No.

Q. And why do you believe that?

7

A. Because—

MR. URRUTIA: I'm going to object to speculation.

THE COURT: I'll let her state her opinion. Proceed.

THE WITNESS: Not the way my brother that I know him, he would sell his tools, he would sell anything other than his truck, his motorcycle, anything like that. Because that's just the way he was.

We review a decision to overrule an objection to the admission of evidence for an abuse of discretion. *Green v. State*, 934 S.W.2d 92, 102 (Tex. Crim. App. 1996). Testimony must have probative value to be admissible and must be based on personal knowledge. *See* Tex. R. Evid. 401, 402, 602. Testimony that is based solely on speculation and conjecture lacks the probative value to be relevant or admissible. *See Turro v. State*, 950 S.W.2d 390, 403 (Tex. App.—Fort Worth 1997, pet. ref'd). Lay witness opinion testimony is admissible if the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the testimony or the determination of a fact in issue. Tex. R. Evid. 701. When considering whether to admit a lay witness's opinion of whether a defendant acted with a culpable mental state, courts may admit opinions that are interpretations of the witness's objective perception of events. *Fairow v. State*, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997). For instance, a trial court did not abuse its discretion by allowing prison guards to give their opinion about whether a prisoner who they saw strike a guard did so intentionally or accidentally. *See id.* The opinion must be rationally based on the perception. *Id.* at 899-900. Whether an opinion meets the fundamental requirements of Rule 701 is within the sound discretion of the trial court and its decision regarding admissibility should be overturned only if it abuses its discretion. *Id.* at 901.

8

We first note that Gamez did not object to the question and answer regarding whether she thought that her brother would sell his truck or belongings for crack. No error is preserved regarding that testimony. *See* Tex. R. App. P. 33.1; *Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985) (granting of motion in limine does not alone preserve error; "absolutely necessary that an objection be made at the time when the subject is raised during the trial"); *see also Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004) (failing to request an instruction to disregard or a mistrial waives review of errors not complained of).

We also find no abuse of discretion in the admission of Gonzales's sister's explanation for her opinion. While she could not know for certain under what conditions Gonzales would sell the truck, she had given a basis for her opinion through testimony about her knowledge of its importance in his life. She said that he had lived in his truck for the previous nine months because he was a free spirit. Living in the truck and parking near downtown, he could be closer to his construction jobs and he could send the money saved to his kids instead of paying rent. She testified that he kept many of his tools in his truck as well as clothes, towels, and documents like the truck title and his checkbook. She said he chose the parking place because it was near a police substation and her sister-in-law's home. He worked on the truck to get it running well. She helped him try to get the title properly transferred to him, and he repeatedly obtained temporary license plates during that time. The objected-to testimony may have assisted the jury in determining the consequential fact of whether he consented to the transfer of property—i.e., whether Gamez killed him in the course of stealing his truck (as opposed to taking it consensually). On this record, we conclude that the trial court did not abuse its discretion by allowing the witness to explain why

9

she believed that her brother would not have traded his truck or his personal belongings for crack cocaine.

We further conclude that, even if the trial court did abuse its discretion in overruling the objection, the admission of this evidence did not affect Gamez's substantial rights. The jury could assess for itself whether the circumstances indicated a willing exchange or was more consistent with a robbery. Her explanation of the basis for her opinion added little to the background testimony or the unobjected-to opinion itself. Further, the jury heard other testimony that Gamez said that Gonzales fought to keep his belongings, which is more straightforward support for the robbery finding than Gonzales's sister's opinion that he would not sell his belongings. We find no abuse of discretion in the admission of this testimony and no harm from any error in its admission.

**The trial court did not abuse its discretion by admitting testimony from Shaw that John Salinas—Gamez's non-testifying codefendant—said "we ran him over, it was like running over a speed bump."**

Gamez complains that the admission of Shaw's testimony violated a trial-court order regarding Shaw's testimony about statements he claimed Gamez and John Salinas made about how they acquired Gonzales's truck. Shaw could testify about what each man said about their respective actions, but the State would have to approach the bench before inquiring about what Salinas said regarding Gamez's actions. As the State questioned Shaw, the following colloquy occurred:

> STATE: So specifically when you were talking to Mario, what did Mario tell you as far as how he got the truck and the motorcycle?
>
> SHAW: He jacked it from some dude.
>
> STATE: Okay. And did John Angel tell you anything about his role in the robbery?

10

SHAW: He told me he stabbed him.

STATE: Okay. And did Mario say anything after John Angel told you that he stabbed him?

SHAW: Yeah, he said that he hit him and the dude fell to the ground.

STATE: Okay. Did Mario tell you what happened after the dude fell to the ground?

SHAW: That he jumped in the car, the truck.

STATE: Okay. And did Mario tell you who was driving?

SHAW: Mario was driving.

STATE: Okay. And did Mario tell you what happened as he was driving off?

**SHAW: No, that's when Angel jumped in and was like, yeah, we ran him over, it was like running over a speed bump.**

STATE: Okay.

SHAW: Pretty much after then Mario was quiet. He was just chilling.

(Emphasis added.) Gamez contends that the trial court erred by allowing the emphasized testimony.

We first note that Gamez did not object to the testimony or seek to have it struck and therefore did not preserve any error for our review. *See* Tex. R. App. P. 33.1; *Gonzales*, 685 S.W.2d at 50; *see also Young*, 137 S.W.3d at 70.

Even if error were preserved and existed, Gamez was not harmed by this testimony because similar evidence came in through other testimony. *See Livingston v. State*, 739 S.W.2d 311, 332 n.13 (Tex. Crim. App. 1987). Zamora's statement to police had already been admitted into evidence when Shaw testified. She reported similar comments—that Gamez said he hit Gonzales and that John Angel Salinas stabbed him, that Gonzales fought to keep his possessions, and that

11

Gamez drove the truck off and ran over Gonzales—though she recanted that statement at trial. Gonzales's injuries were consistent with having been run over by a vehicle. State's witnesses testified about hair and blood consistent with Gonzales's hair and blood that they found on the underside of the truck. The admission of Shaw's testimony that Gamez ran over Gonzales did not affect Gamez's substantial rights.

**The evidence was sufficient to support the conviction.**

In reviewing the sufficiency of the evidence to support a conviction, we determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In making this determination, we consider all evidence that the trier of fact was permitted to consider, regardless of whether it was rightly or wrongly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We view this evidence in the light most favorable to the verdict. *Id.* The jury, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Montgomery v. State*, 369 S.W.3d 188, 193 (Tex. Crim. App. 2012). Therefore, we presume that the jury resolved any conflicting inferences and issues of credibility in favor of the judgment. *Id.* Circumstantial evidence is as probative as direct evidence in establishing an actor's guilt, and an actor's guilt can be established with circumstantial evidence alone. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). Every fact need not point directly and independently to the guilt of the appellant; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Id.*

Capital murder as charged invokes several statutes. A person commits murder if he intentionally or knowingly causes the death of an individual, *see* Tex. Penal Code § 19.02(b), and commits capital murder by intentionally murdering someone in the course of committing a robbery, *id.* § 19.03(a)(2). A person commits robbery if, in the course of committing a theft and with the intent to obtain or maintain control of the property, he either intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens or places another in fear of imminent bodily injury or death. *Id.* § 29.02. A person commits theft if, with the intent to deprive the owner of property, he takes the property without the owner's effective consent. *Id.* § 31.03. A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result. *Id.* § 6.03(a).

Gamez contends that the evidence was insufficient to show that he caused Gonzales's death in the course of robbing him, to show that he actually caused Gonzales's death, and to show that he intentionally caused Gonzales's death. He contends testimony that he obtained the vehicle through a consensual exchange for crack cocaine proves that he did not rob Gonzales. He argues that the State failed to prove that he, not somebody else, killed Gonzales because under the State's timeline Gonzales lay in the street for at least thirty minutes and could have been run over by others. He further contends that no evidence shows he intentionally killed Gonzales and that, to the contrary, evidence shows at most that he accidentally ran over Gonzales. He asserts that testimony that Salinas asked Gonzales if he was okay undermines the intent element and thus the capital murder conviction.

A jury could have rationally determined beyond a reasonable doubt that Gamez running over Gonzales caused Gonzales's death. The evidence of Gonzales's injuries connected his death to an automobile running over him. The blood and hair evidence from Gonzales's truck supported a finding that it ran over him. Testimony that Gamez drove the truck pegged him as the driver. The jury saw snippets from motion-activated security cameras showing a glimpse of the conditions at that time. There is no evidence of any other vehicle striking Gonzales, just an assertion that it could have happened. The jury was not required to elevate this assertion over the evidence in the record that connected Gamez driving the truck to Gonzales's death.

The evidence is also sufficient to support the finding that Gamez robbed Gonzales. There was testimony that Gamez said he "jacked" the truck from Gonzales. Reports that Gamez said he punched Gonzales and knocked him to the ground support a finding that Gamez intended to deprive Gonzales of property without his consent, as does the stab wound reportedly inflicted by John Salinas in the same interaction. The jury could have reasoned independently of Gonzales's sister's opinion testimony that Gonzales did not willingly part with his tools, his documents, his mementos, and what in effect was his home. Gonzales's sister's opinion supported that idea, as did Zamora's recanted statement that Gamez reported that Gonzales fought to keep his belongings. Gonzales's injuries clearly satisfy the robbery statute's bodily injury requirement, and the circumstances are sufficient support for an inference that Gamez placed Gonzales in fear of imminent injury in order to effectuate the theft.

Finally, the record contains sufficient evidence to support the finding that Gamez intentionally killed Gonzales. Intent to kill is a question of fact for the jury to determine. *Brown*

14

*v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). In determining whether intent to kill was proven, the jury can use its collective common sense and may apply common knowledge and experience. *See Rodriguez v. State*, 90 S.W.3d 340, 355 (Tex. App.—El Paso 2001, pet. ref'd). The jury may infer the intent to kill from any evidence that it believes proves the existence of that intent. *Brown*, 122 S.W.3d at 800. Intent can be inferred from such circumstantial evidence as the person's acts, words, and conduct. *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009); *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). The jury could infer intent from Gamez running over Gonzales while robbing him. The testimony that Gamez stopped the vehicle so that John Salinas could inquire about Gonzales's condition does not necessarily show the absence of the required intent.

We further note that the jury could have found Gamez's leaving Gonzales on the street, his attempt to avoid the police when he was caught in Chavira's car, and his alleged threats to Shaw if he told anyone how Gamez obtained the truck are consistent with knowledge of intentional wrongdoing. *See Clay v. State*, 240 S.W.3d 895, 905 n.11 (Tex. Crim. App. 2007) (fleeing as evidence of guilt); *Johnson v. State*, 425 S.W.3d 344, 346 (Tex. App. Houston [1st Dist.] 2011, pet. ref'd) (threats to potential witnesses as evidence of guilt).

15

## CONCLUSION

Having found no reversible error presented, we affirm the judgment.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Affirmed

Filed: June 11, 2015

Do Not Publish

16

MARIO GAMEZ #1860754
COFFIELD UNIT
2661 F.M. 2054
TENNESSEE COLONY, TX. 75884

SENT
9-1-15
( LEGAL MAIL )



COURT OF CRIMINAL APPEALS
P.O. BOX 12308
AUSTIN, TX. 78711